Heller v. Bedford Central Sch. Dist., et. al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand sixteen.

PRESENT: DENNIS JACOBS,
        DEBRA A. LIVINGSTON,
                <u>Circuit Judges</u>,
        JED S. RAKOFF,[*]
                <u>District Judge</u>.

- - - - - - - - - - - - - - - - - - - - - -X

ADAM B. HELLER,
        <u>Plaintiff-Appellant</u>,

        -v.-                          16-242

BEDFORD CENTRAL SCHOOL DISTRICT; DR. JERE HOCHMAN; TOWN OF POUND RIDGE; DAVID RYAN; WESTCHESTER MEDICAL CENTER; SUSAN KEMKER, M.D.,
        <u>Defendants-Appellees</u>,

---

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1

**ALEXANDER LERMAN, M.D.,**
     **Defendant**.

- - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**                 MICHAEL H. SUSSMAN, Sussman & Watkins, Goshen, New York.

**FOR APPELLEES TOWN OF POUND RIDGE and DAVID RYAN:**
                          STEVEN C. STERN, Sokoloff Stern LLP, Carle Place, New York.

**FOR APPELLEES BEDFORD CENTRAL SCHOOL DISTRICT and DR. JERE HOCHMAN:**          RICHARD G. KASS, Bond, Schoeneck & King, PLLC, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Forrest, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Adam B. Heller appeals from the judgment of the United States District Court for the Southern District of New York (Forrest, <u>J.</u>) dismissing under Rule 12(b)(6) his various § 1983 claims. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. We affirm on the grounds that Heller's communications presented a substantial risk of disruption that, as a matter of law, justified the school district's actions; that there was probable cause for Heller's arrest and detention; that his brief commitment to

a mental institution did not shock the conscience such that it violated substantive due process; and that his Second Amendment challenge is baseless given that commitment.

Heller is a former public school teacher. In December 2012 and January 2013, he purchased two firearms, received a third from a friend, and was shopping for a fourth. At the same time, he had a month-long online conversation with Georgia O'Connor via the online game Words with Friends. During the course of that conversation, Heller told O'Connor that he believed aliens controlled the government; that the Sandy Hook school shooting (which had recently happened) was fake; and that he "want[s] to kill people." The FBI received an anonymous tip about Heller in January and began monitoring his online communications. They coordinated with the local police department, which stopped Heller on January 18 as he drove home from a gun store.

The police induced Heller to go to a local hospital where he was psychiatrically committed and later released. The school district at which he worked then brought disciplinary charges stating that Heller should be dismissed from his teaching job because he failed to cooperate with an investigation into his mental health and because he was incompetent to work as a teacher due to mental illness. After an eight-day hearing, a hearing officer sustained all

3

charges against Heller and praised the Pound Ridge police department, the Bedford Central School District, and the Westchester Medical Center for their roles.

Heller sued the school district, the school superintendent, the town of Pound Ridge, Pound Ridge's chief of police, the medical center, and several of the psychiatrists who examined him. He now appeals from dismissal of his § 1983 claims which alleged: 1) retaliation based on views he expressed in his online chat with O'Connor; 2) unlawful search and detention; 3) violation of substantive due process rights; and 4) violation of his right to bear arms.

Heller's online conversations and the record of his dismissal hearing are both integral to and incorporated by reference in his complaint. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). All parties cite these records extensively and none object to their consideration on appeal.

The District Court properly dismissed Heller's retaliation claims. At the start, Heller's statements, assuming arguendo that they relate to a matter of public concern, were of such a character that "the disruption they cause[d]" or threatened was "great enough to warrant the school's action against him." Melzer v. Bd. of Educ. of

City Sch. Dist. of City of New York, 336 F.3d 185, 198 (2d Cir. 2003). Indeed, although we need not reach the question whether these statements constitute a "true threat," their threatening quality is highly relevant to the Pickering balance. See Melzer, 336 F.3d at 198 (referencing the balancing test outlined in Pickering v. Bd. of Educ., 391 U.S. 563 (1968)).[1]

In his online chats with O'Connor, Heller said that he was "stewing in anger . . . and want[s] to kill people . . . because the people who are behind [government weather control] are evil." O'Connor asked "what people do you think deserve to die for the sins of an evil government," and Heller responded, "oh I don't know. but I could probably do some research and hand you a list . . . #1. Someone should just shoot down one of the planes." O'Connor said, "you are scaring me," and asked him to "just promise me you arent going to kill anybody." Heller responded "yea I promise." O'Connor brought up the "list" in a subsequent

---

[1]The test for whether a communication is a true threat is objective, and the determination is a question of law. United States v. Francis, 164 F.3d 120, 123 at n.4 (2d Cir. 1999); United States v. Turner, 720 F.3d 411, 420 (2d Cir. 2013). The inquiry is "whether an ordinary, reasonable recipient who is familiar with the context of the communication would interpret it as a threat of injury." Id. (quoting United States v. Davila, 461 F.3d 298, 305 (2d Cir. 2006)). A statement can be a true threat even if the speaker has no intention of carrying it out. Id.

conversation, and Heller said, "there are a lot of people in this country who have done seriously evill things to the masses. one day, someone is going to make a list and go about the task of removing them from power. That will be in the middle of a civil war in America."

Context is crucial to identification of a true threat. Turner, 720 F.3d at 420.  The context here bespeaks danger.

- Heller was delusional.  He believed that the military controlled the weather and had deliberately caused Hurricane Sandy, the Haitian earthquake, and the Fukushima nuclear disaster.

- He believed that space aliens controlled the government, that the government was capable of mind control, and that he was working on "deprogramming himself" from that government mind control.

- He was a public school teacher who came into contact with 125-150 students each semester.

- He believed that the Sandy Hook elementary school killing of 26 people had been faked; he appeared to have researched the shooting; and he made his threatening statements within a few weeks of it.

- He seemed to be angry, depressed, and generally emotionally "worked up."

- And--with no prior history of interest in guns or gun ownership--he purchased two guns, received a third from a friend, and considered purchasing a fourth, all in a brief period.

 Although we need not decide whether Heller's statements constituted a true threat to determine whether the Pickering balance has been satisfied, as a matter of law, the record is clear that "an ordinary, reasonable recipient who is familiar with the context of the communication" could well have viewed Heller's communications as "a threat of injury." Turner, 720 F.3d at 420. O'Connor herself seems to have interpreted them as legitimate threats. United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994) ("In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant.").

 Heller argues that his statements were "off-the-cuff political hyperbole written in the context of friendly social media banter," and that he ended the conversation with "humor." However, his statements appear to be in earnest, and O'Connor so interpreted them. He identified airplanes as targets and said that people in government deserved to die; and his conduct raised prudent concern about the risk of a school shooting. See Turner, 720 F.3d

7

at 424 (rejecting the argument that "only communications that facially threaten unequivocal, unconditional, immediate, and specific injury" are "true threats"). In such circumstances, the school's concern about the safety of its students and the potential for "severe . . . disruption" to its functioning justified its actions. See Melzer, 336 F.3d at 198, 199 (stating that such factors "may outweigh a public employee's rights").

Heller has also failed to plausibly allege that the defendants were motivated by a desire to retaliate against Heller for his views. A review of the record confirms that the defendants were interested in Heller's communications only insofar as they raised the prospect of a shooting spree at the high school. The school district did not immediately bring charges after it learned of Heller's speech. Instead, school officials worked with law enforcement to monitor the situation at the high school. Next, the district ordered an independent psychological evaluation of Heller. Only after the evaluation process was complete did the district bring charges against Heller. Moreover, the charges were not based on his speech but rather (a) his unwillingness to cooperate with the evaluation and (b) the possibility that he might be mentally unfit to teach. As the claim of

8

retaliation is not plausible on its face, it must be dismissed.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

Heller's other First Amendment claim is that he intended his gun purchases as a symbolic invocation of his Second Amendment rights so that his possession constituted expressive conduct protected by the First Amendment.  Heller does not allege that anyone other than the gun store employees knew of his purchases.  Without more, a gun store employee would understand Heller's purchase as a routine retail transaction.  And since there was no likelihood that the supposed message "would be understood by those who viewed it," he has not sustained his burden of demonstrating more than a "plausible contention" that his purchase was expressive.  <u>Church of Am. Knights of the Ku Klux Klan v. Kerik</u>, 356 F.3d 197, 205 (2d Cir. 2004); <u>see also</u> <u>Nordyke v. King</u>, 319 F.3d 1185, 1190 (9th Cir. 2003) ("Typically a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it.").

Heller's Fourth Amendment claim is defeated by probable cause.  He argues that his arrest on January 18 and his subsequent hospital detention--both based on his mental health--were unlawful.  Pursuant to New York's Mental Hygiene law, the police may take into custody individuals

9

who both appear mentally ill and pose a substantial risk of physical harm to others. N.Y. Mental Hyg. Law §§ 9.41, 9.01. Probable cause to make such an arrest means a substantial chance or probability that those requirements are satisfied, based on the information that the police had at the time. Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983); Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001).

At the time of the arrest, the police department had access to Heller's communications with O'Connor, along with an anonymous tip from a friend of Heller's and information about Heller's gun purchases. Heller's delusional communications established at least a substantial chance that he was mentally ill and posed a risk of physical harm to others. Since there was probable cause for both the initial arrest and the detention, the Fourth Amendment claims were properly dismissed.

Heller claims his substantive due process rights were violated by his involuntary commitment. But substantive due process rights are only implicated when commitment decisions reflect a level of care *substantially* below the standards of the medical community. Bolmer v. Oliveira, 594 F.3d 134, 142 (2d Cir. 2010). That is a level considerably worse than malpractice; a level so dismissive of the patient's rights

10

to care and freedom that it shocks the conscience. <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998). Heller has not plausibly alleged that the standards used to commit him shock the conscience, and his claim was therefore properly dismissed.

Heller's Second Amendment claim is that his involuntary commitment to a mental institution made it illegal under federal law for him to purchase guns. 18 U.S.C.A. § 922(g)(4). Restrictions on the purchase of guns by the mentally ill are presumptively lawful. <u>D.C. v. Heller</u>, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."); <u>see also</u> <u>New York State Rifle & Pistol Ass'n, Inc. v. Cuomo</u>, 804 F.3d 242, 269 n.107 (2d Cir. 2015). Heller's Second Amendment claim was properly dismissed because the restriction on gun purchases by individuals committed to a mental institution is presumptively lawful, and because Heller has not stated a plausible claim that he was improperly committed.

11

For the foregoing reasons, and finding no merit in Heller's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK